[No. 21574-1-III.   Division Three.   November 4, 2003.]

PAULA K. GALLO, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Robert C. Milhem*, for appellant.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg, Assistant,* for respondent.

Brown, C.J. — Paula K. Gallo is a union construction worker. Pursuant to a collective bargaining agreement, her employer contributed a designated sum of money to trust accounts in Ms. Gallo's name for every hour she worked. The trusts funded Ms. Gallo's health insurance, retirement, and apprenticeship training benefits. Ms. Gallo was injured on the job and received worker compensation benefits from the Department of Labor and Industries (Department). For purposes of income loss benefit calculations under RCW 51.08.178, the Department did not include Ms. Gallo's trust account contributions as part of her wages. Ms. Gallo filed an administrative appeal as to a number of issues including her benefits. The Board of Industrial Insurance Appeals (Board) reversed the Department as to the health insurance benefits but affirmed as to the pension and apprentice training benefits. Ms. Gallo appealed the loss of the latter two benefits to the superior court, which affirmed the Board. Ms. Gallo appeals here contending the employer contributions for retirement and apprenticeship training

benefits are "wages" under RCW 51.08.178. We disagree and affirm.

## FACTS

Unless otherwise designated, the following facts flow from the superior court's unchallenged findings of fact.

Ms. Gallo worked full time as a construction operating engineer for Murphy Brothers, Inc. She belongs to the International Union of Operating Engineers Local 370. "Her rate of pay was $18.10 per hour in direct salary, $2.50 per hour for pension benefits, 30 cents per hour for required contribution to the apprenticeship program, and $2.55 per hour for health insurance benefits." Clerk's Papers (CP) at 60, Finding of Fact (FF) 2.

On August 29, 1997, Ms. Gallo was injured while operating heavy equipment. In September, she successfully filed a claim for benefits with the Department.

In 1998, the Department assessed an overpayment on the basis that Ms. Gallo was a seasonal worker. Ms. Gallo appealed to the Board.

On August 17, 2001, the Industrial Insurance Appeals Judge (IIAJ) entered a proposed decision and order finding Ms. Gallo to be a full-time worker. The IIAJ also found Ms. Gallo's medical insurance benefit "a core benefit of like nature to food, shelter, and fuel." Board Record (BR) (Aug. 17, 2001) at 29, FF 9. Conversely, the IIAJ found Ms. Gallo's pension benefit to be "a fringe benefit of a nature unlike food, shelter, fuel, and health insurance." BR at 30, FF 10. Similarly, the IIAJ found Ms. Gallo's "apprenticeship-program-contribution benefit" to be "a fringe benefit of a nature unlike food, shelter, fuel, and health insurance." BR at 30, FF 11.

The IIAJ concluded that Ms. Gallo's "employer-furnished health insurance benefits constitutes includable 'wages' for purpose of computing her rates of time-loss compensation and loss of earning power pursuant to RCW 51.08.178." BR at 30, Conclusion of Law (CL) 4. But the IIAJ also concluded

that Ms. Gallo's "employer-furnished pension benefits does not constitute includable 'wages' for purpose of computing her rates of time-loss compensation and loss of earning power pursuant to RCW 51.08.178." BR at 30, CL 5. Likewise, the IIAJ concluded Ms. Gallo's "employer furnished contribution to the apprenticeship program of the International Union of Operating Engineers Local 370 does not constitute includable 'wages' for purpose of computing her rates of time-loss compensation and loss of earning power pursuant to RCW 51.08.178." BR at 30-31, CL 6. The IIAJ reversed the Department's order and remanded so that Ms. Gallo's health insurance benefits could be factored into her worker's compensation award.

Ms. Gallo then petitioned the Board to review the proposed decision and order. The Board denied the petition and adopted the proposed decision and order as the Board's final order.

Ms. Gallo then filed a notice of appeal to the Spokane County Superior Court. The superior court affirmed the Board in a memorandum opinion and in findings of fact and conclusions of law consistent with the IIAJ's proposed decision and order.

Ms. Gallo then appealed to this court.

## ANALYSIS

The issue is whether the trial court erred when it affirmed the Department's final order that declined to include Ms. Gallo's pension benefits and apprenticeship training benefits in her wage calculation.

In industrial insurance cases, the superior court conducts a de novo review of the Board's decision but relies exclusively on the evidence contained in the certified board record. RCW 51.52.115. "In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same." *Id.* "Appeal shall lie

from the judgment of the superior court as in other civil cases." RCW 51.52.140.

██ Here, Ms. Gallo does not assign error to the trial court's findings of fact, which are nearly identical to the IIAJ's findings of fact. Accordingly, those unchallenged findings of fact are verities on appeal. *Dep't of Labor & Indus. v. Kantor*, 94 Wn. App. 764, 772, 973 P.2d 30 (1999); *see also Heidgerken v. Dep't of Natural Res.*, 99 Wn. App. 380, 384, 993 P.2d 934 (2000) (noting that unchallenged agency findings are verities on appeal pursuant to the Administrative Procedure Act, chapter 34.05 RCW).

This issue turns on the meaning of RCW 51.08.178, the provision of the Industrial Insurance Act defining wages. That statute partly states:

> For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned.
>
> . . . .
>
> The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract for hire . . . .

RCW 51.08.178(1).

██ Resolving whether the term "wages" includes the funds Ms. Gallo's employer paid into trust accounts on her behalf requires statutory interpretation, a question of law we review de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001); *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996). In interpreting a statute, this court strives "to best advance" the underlying legislative purpose. *State v. C.J.*, 148 Wn.2d 672, 685, 63 P.2d 765 (2003) (citing *Morris v. Blaker*, 118 Wn.2d 133, 143, 821 P.2d 482 (1992)). We start with interpreting the plain meaning of the language on the face of the statute and closely related statutes in light of the underlying legislative purpose. *See Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003);

*Wagg v. Estate of Dunham*, 146 Wn.2d 63, 73, 42 P.3d 968 (2002); *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). Moreover, we interpret the statute in its entirety, reviewing all of its provisions in relation to each other. *In re Det. of Williams*, 147 Wn.2d 476, 490, 55 P.3d 597 (2002).

The Supreme Court recently held the definition of "wages" in RCW 51.08.178 includes employee health care benefit premiums paid by the employer. *Cockle*, 142 Wn.2d at 823. Understanding the *Cockle* court's extensive analysis is critical in determining whether Ms. Gallo's pension benefits and apprentice training benefits constitute wages under RCW 51.08.178.

■ The *Cockle* court held RCW 51.08.178 "expressly expands" the meaning of the term "wages" "to include the 'reasonable value' of in-kind work benefits such as 'board, housing [and] fuel.' " *Cockle*, 142 Wn.2d at 808. "That definitional expansion clearly removes the term from its arguably more common usage and makes it manifest that the Legislature intended to include in 'wages' the value of at least some in-kind work 'benefits.' " *Id.*

The Supreme Court also found the phrase " 'other consideration of like nature' " to be ambiguous. *Id.* (quoting RCW 51.08.178(1)). The court therefore had to resort to "principles of statutory construction, legislative history, and relevant case law to assist us in discerning legislative intent." *Id.* (citing *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998); *State v. Bash*, 130 Wn.2d 594, 601-02, 925 P.2d 978 (1996)).

Applying ejusdem generis, a canon of statutory construction that requires certain specific language to control more general terms, and noting that an appellate court must construe the statute so as not to render any portion of it superfluous, the Supreme Court reasoned the specific phrase "of like nature" controlled the broader phrase "any other consideration." *Cockle*, 142 Wn.2d at 808-10. "The Legislature's specific choice of words thus rules out both exceedingly narrow and exceedingly broad readings of the

phrase 'other consideration of like nature received from the employer as part of the contract of hire.' " *Id.* at 810.

The Supreme Court then noted the legislative history of RCW 51.08.178 supported its interpretation of that statute. *Cockle*, at 810-11. And the *Cockle* court further noted it construes Title 51 RCW liberally " 'for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment.' " *Id.* at 811 (quoting RCW 51.12.010). "In other words, where reasonable minds can differ over what Title 51 [RCW] provisions mean, in keeping with the legislation's fundamental purpose, the benefit of the doubt belongs to the injured worker." *Id.* In that connection, the *Cockle* court also declined to defer to the agency's interpretation of the statute, reasoning the agency's reading of RCW 51.08.178 conflicted with the liberal construction mandate underlying Title 51 RCW. *Id.* at 812.

Significantly, the *Cockle* court declined to follow *Morrison-Knudsen Construction Co. v. Office of Workers' Compensation Programs*, 461 U.S. 624, 626, 103 S. Ct. 2045, 76 L. Ed. 2d 194 (1983), an opinion that adopted a narrow reading of the "wages" definition in a District of Columbia worker compensation statute, which was based on an older federal act. *See Cockle*, 142 Wn.2d at 815-20. The Washington court found the reasoning of Justice Thurgood Marshall's *Morrison-Knudsen* dissent more persuasive than the majority opinion. *Cockle*, 142 Wn.2d at 817-19; *see also Morrison-Knudsen*, 461 U.S. at 641-42. "For the purposes of determining a worker's earning power, there is no principled distinction between direct cash payments and payments into a plan that provides benefits to the employee." *Morrison-Knudsen*, 461 U.S. at 641 (Marshall, J., dissenting); *see also Cockle*, 142 Wn.2d at 818 (quoting Justice Marshall's dissent).

Notwithstanding its general approval of Justice Marshall's broadly-worded dissent, the Supreme Court agreed with the Court of Appeals in rejecting an " 'any and all forms of consideration' " standard for determining

"wages" for purposes of RCW 51.08.178 as set forth in an earlier Court of Appeals' dictum. *Cockle*, 142 Wn.2d at 821 (quoting and rejecting *Rose v. Dep't of Labor & Indus.*, 57 Wn. App. 751, 758, 790 P.2d 201 (1990)); *see also Cockle v. Dep't of Labor & Indus.*, 96 Wn. App. 69, 76-77, 977 P.2d 668 (1999) (rejecting *Rose* as dicta), *aff'd as modified*, 142 Wn.2d 801, 16 P.3d 583 (2001). Departing somewhat from the recent Court of Appeals' analysis, the *Cockle* court noted the ambiguity of the statutory phrase " 'other consideration of like nature.' " *Cockle*, 142 Wn.2d at 821-22 (quoting RCW 51.08.178(1)). Accordingly, the Supreme Court construed the phrase in a manner that best advances " 'the perceived legislative purpose.' " *Cockle*, 142 Wn.2d at 822 (quoting *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991)).

Regarding legislative purpose, the *Cockle* court observed the "overarching objective" of Title 51 RCW is to reduce to a minimum " 'the *suffering* and economic loss arising from injuries and/or death occurring in the course of employment.' " *Cockle*, 142 Wn.2d at 822 (quoting RCW 51.12.010) (emphasis added). The Court further noted the remedial nature of the workers' compensation system and the current statute requires a wage loss calculation that reflects the injured worker's actual " 'lost earning capacity.' " *Cockle*, 142 Wn.2d at 822 (quoting *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997)). "Also, on a practical level, this court has recognized that the workers' compensation system should continue 'serv[ing] the goal of swift and certain relief for injured workers.' " *Cockle*, 142 Wn.2d at 822 (quoting *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 138, 814 P.2d 629 (1991)).

> We therefore construe the statutory phrase "board, housing, fuel, or other consideration of like nature" in RCW 51.08.178(1) to mean readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival. Core, *non*fringe benefits such as food, shelter, fuel,

and health care all share that "like nature." By contrast, we do not believe injury-caused deprivation of the reasonable value of *fringe* benefits that are *not* critical to protecting workers' basic health and survival qualifies as the kind of "suffering" that Title 51 RCW was legislatively designed to remedy.

*Cockle*, 142 Wn.2d at 822-23 (citing RCW 51.12.010) (footnote omitted).

Ms. Gallo, relying on the collective bargaining agreement (Exhibit 1) and Justice Marshall's dissent, contends the sums her employer paid into trust accounts in her name are a form of direct "wages" rather than separate fringe benefits falling under the *Cockle* "like nature" analysis. Ms. Gallo's argument is unpersuasive because the collective bargaining agreement lists the trust fund payments as "FRINGE BENEFITS." Ex. 1 at 24. And, the agreement provides that the employer's trust fund contributions are paid "in addition to" listed "wage rates." Ex. 1 at 27-28.

In essence, the trust fund contributions are not a direct wage payment but are separate contributions to fringe benefits indexed to the number of hours worked. Further, Ms. Gallo's reliance on *Pulcino v. Federal Express Corp.*, 141 Wn.2d 629, 649-50, 9 P.3d 787 (2000) is inapt; that union discrimination case did not deal at all with the issue before this court. Consequently, it would be more appropriate to treat the trust fund contributions as "other consideration" subject to the *Cockle* analysis.

Additionally, Ms. Gallo's argument is unpersuasive because it is tantamount to the " 'any and all forms of consideration' " approach to wage calculation that the *Cockle* court emphatically rejected in favor of a more narrow construction of the statutory definition of wages. *Cockle*, 142 Wn.2d at 821-23 (quoting and rejecting *Rose*, 57 Wn. App. at 758).

Ms. Gallo also reads too much into the *Cockle* court's general approval of Justice Marshall's dissent. Justice Marshall's dissent was persuasive authority for rejecting *Morrison-Knudsen*. *Cockle*, 142 Wn.2d at 817-19. But the *Cockle* court did not adopt the dissent as *its* holding.

Instead, the *Cockle* court construed the phrase "board, housing, fuel, or other consideration of like nature" somewhat narrowly to apply solely to benefits "critical to protecting workers' basic health and survival." *Id.* at 822; RCW 51.08.178(1).

Moreover, the IIAJ concluded, in accordance with *Cockle*, that the trust fund contributions for purposes of Ms. Gallo's health insurance benefits factor into her wage loss calculations. The superior court affirmed, and neither the Department nor Ms. Gallo dispute that result. Ms. Gallo incorrectly contends the *Cockle* "like nature" analysis does not apply to the other two remaining trust fund contributions.

Now, the proper inquiry is whether the employer's other trust fund contributions for Ms. Gallo's pension benefits and apprenticeship training were "other consideration of like nature" to "board, housing, [or] fuel." RCW 51.08.178(1). To be eligible for wage loss calculation, the concerned benefits must be "critical to protecting [the injured worker's] basic health and survival." *Cockle*, 142 Wn.2d at 822.

Although the apprenticeship training program is important for Ms. Gallo's career development, and it applied at the time of her injury, it cannot be considered "critical" to "protecting" her "basic health and survival." *Id.* Stated another way, a critical benefit is one that Ms. Gallo would have great difficulty surviving without. Under that standard, the apprenticeship training program is not a fringe benefit of "like nature" to "board, housing, [or] fuel." RCW 51.08.178(1). Ms. Gallo conceded that point at oral argument.

The pension benefit contribution is perhaps a closer question. In light of *Cockle*, for purposes of RCW 51-.08.178(1), board, housing, and fuel pertain to benefits the worker receives at the time of the injury. Without these necessities during the time of wage loss, the injured worker would have great difficulty surviving. Accordingly, other consideration of "like nature" to board, housing and fuel means benefits "critical" to "basic health and survival" and

available to the worker at the time of the injury. *Cockle*, 142 Wn.2d at 822; *Cockle*, 96 Wn. App. at 78.

Health care benefits are consideration of "like nature" because they are something the worker can rely on at the time of injury and are obviously "critical" to the worker's "basic health and survival." *Id.* In contrast, pension benefits are not immediately available, unless the worker is presently eligible, and are therefore not "critical" to the worker's "basic health and survival" at the time of injury. *Id.* This interpretation is consistent with the overarching purpose of Title 51 RCW of "reducing to a minimum the suffering and economic loss" of the injured worker. RCW 51.12.010; *see also Cockle*, 142 Wn.2d at 822. Accordingly, we reason the pension benefit contributions in this case were not "consideration of like nature" to "board, housing, [or] fuel." RCW 51.08.178(1); *see also Cockle*, 142 Wn.2d at 822-23.

Responding to *Cockle*, the Department recently promulgated a set of regulations that generally support the foregoing interpretation. *See* WAC 296-14-522(1) and (3) (defining wages as (1) "cash wages," (2) bonuses, and (3) "[t]he reasonable value of board, housing, fuel and other consideration of like nature" fringe benefits); WAC 296-14--524(1)(a), and (c) (defining "other consideration of like nature" to be benefits "objectively critical to protecting the worker's basic health and survival at the time of injury," i.e., benefits that provide "a necessity of life" and that are "critical to protecting the employee's immediate health and survival"). Because these new regulations did not become effective until June 15, 2003, we have not relied on them.

The Department posed alternative arguments for affirming the superior court, which we need not address because we have determined the superior court correctly decided the dispositive issues. The Department prevails here.

Affirmed.

SWEENEY and KURTZ, JJ., concur.

Review granted at 152 Wn.2d 1011 (2004).