14

[No. 28937-1-III.   Division Three.   March 27, 2012.]

JORGE L. CANTU, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Defendant*, WESTFARM FOODS, *Appellant*.

*Gilbert M. Stratton* and *Eric R. Leonard* (of *Pratt Day & Stratton PLLC*), for appellant.

*Darrell K. Smart* (of *Smart Connell & Childers PS*), for respondent.

¶1 SIDDOWAY, J. — WestFarm Foods successfully challenged Jorge Cantu's effort to reopen his industrial insurance claim in proceedings before the Department of Labor and Industries and the Board of Industrial Insurance Appeals, but lost Mr. Cantu's appeal seeking de novo review by the superior court. WestFarm appeals the court's judgment and order that Mr. Cantu's claim be reopened. We find that the trial court erred in concluding that WestFarm, although the prevailing party before the board, was obliged to appeal adverse board findings lest they be treated as verities, but we find the error to be harmless. Substantial evidence supports the trial court's findings and judgment, which we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Jorge Cantu injured his left knee while working in a cheese plant for WestFarm Foods in September 2004. He slipped forward and, as he described it, his knee went backwards. He was diagnosed with a complex tear of the medial meniscus and had to undergo two knee surgeries. Before the accident, Mr. Cantu had lived a normal life without disability or significant physical or mental health problems.

¶3 Mr. Cantu filed a claim with the Department of Labor and Industries on October 27, 2004. The claim was concluded by an order that WestFarm pay a permanent partial disability award of 10 percent of the amputation value of the left leg above the knee. The claim was closed on September 6, 2005.

¶4 Approximately two weeks later, Mr. Cantu began to experience more intense back pain than he had previously. He originally attributed it to yard work done on or about September 20. With the passage of time and treatment, however, his treating provider, W. Duane Harrington, DC, came to believe that Mr. Cantu's pain was the result of a limp that he had continued to suffer as a result of his workplace injury; Dr. Harrington concluded that it created a biomechanical instability that put unusual stresses on the low back. Mr. Cantu also developed a major depressive disorder and pain disorder as a result of the chronic increased pain.

¶5 In December 2005, Mr. Cantu filed to reopen his claim, relying on the aggravation of his back pain and his mental health problems. His request to reopen was denied by the department in February 2006, and the decision was affirmed in March 2006. Mr. Cantu appealed the department's decision to the Board of Industrial Insurance Appeals, which affirmed it in November 2007.

¶6 In December 2007, Mr. Cantu appealed the board's decision to Yakima County Superior Court. Before the superior court the parties' dispute boiled down to whether the back pain was causally related to his work injury, whether it had objectively worsened during the relevant time frame, and whether his symptoms satisfying the criteria for a major depressive order—which both parties' experts agreed were present—were real or feigned.

¶7 At the time of the trial court's hearing for purposes of the trial de novo, the parties disputed whether the trial court was required to treat findings of the board that were not challenged by Mr. Cantu as verities. The question was first raised by the court, who explicitly pointed to the board's finding of fact 4, which provided that at the time his claim was closed Mr. Cantu was "experiencing pain and numbness over the lateral left leg into the lateral three toes of his left foot and pain in the left knee, he was limping due to left knee pain; and he was experiencing low back pain. He

was also suffering from peroneal nerve palsy on the left side." Certified Appeal Board Record (CABR) at 4. Earlier in the hearing, WestFarm had allowed that the finding was based solely on what Mr. Cantu testified to before the board because it was not supported by the records or testimony of the medical providers.

¶8 WestFarm argued that as the party that had prevailed before the board, it was "not bound the same way the appealing party is in this case to those findings." Report of Proceedings (RP) at 35. Mr. Cantu "strongly disagreed," arguing that "if a party is unhappy or is prejudiced by reason of a finding of fact, they must at their own peril challenge by filing a Petition for Review." *Id.* While WestFarm persisted in its position that it could challenge findings without having taken an appeal, it also questioned the significance of finding 4, inasmuch as the board's finding 5 was that the back pain was neither caused nor aggravated by his workplace injury. Given the finding of no causal connection, WestFarm argued, "it really doesn't change anything in terms of what you're asked to decide." RP at 36.

¶9 After completing its de novo review of the record, the trial court issued its decision, finding that Mr. Cantu had experienced the aggravation claimed and that it was proximately caused by the workplace injury. It therefore reversed the board's decision and ordered that Mr. Cantu's claim be reopened so that he can obtain appropriate medical treatment. In arriving at its decision, it treated the board's finding 4 as a verity.

¶10 WestFarm appeals the superior court's decision.

## ANALYSIS

¶11 RCW 51.32.160(1)(a) allows a claim to be reopened for the purpose of readjusting the rate of compensation for aggravation of a work-related disability. Four showings are required:

"(1) The causal relationship between the injury and the subsequent disability must be established by medical testimony. (2) The claimant must prove by medical testimony, some of it based upon objective symptoms, that an aggravation of the injury resulted in increased disability. (3) [The] medical testimony must show that the increased aggravation occurred between the terminal dates of the aggravation period. (4) A claimant must prove by medical testimony, some of it based upon objective symptoms which existed on or prior to the closing date . . . , that his disability on the date of the closing order was greater than the supervisor found it to be."

*Eastwood v. Dep't of Labor & Indus.*, 152 Wn. App. 652, 657-58, 219 P.3d 711 (2009) (alterations in original) (footnote omitted) (quoting *Phillips v. Dep't of Labor & Indus.*, 49 Wn.2d 195, 197, 298 P.2d 1117 (1956)), *review denied*, 168 Wn.2d 1023 (2010). In Mr. Cantu's case, the terminal dates defining the period during which the increased aggravation must be shown are September 6, 2005 and March 1, 2006.[1]

¶12 When deciding an appeal from a decision of the Board of Industrial Insurance Appeals, the superior court conducts a de novo review of the board's decision but relies exclusively on the certified board record. RCW 51.52.115; *Gallo v. Dep't of Labor & Indus.*, 119 Wn. App. 49, 53, 81 P.3d 869 (2003), *aff'd*, 155 Wn.2d 470, 120 P.3d 564 (2005). The board's findings and decision are prima facie correct, and the party challenging the board's decision has the burden of proof. *Gallo*, 119 Wn. App. at 53-54. The presumption of correctness is a limited one, meaning that the board's decision will be overturned if the trier of fact finds from a preponderance of the credible evidence that the findings and decision of the board are incorrect. Only if it finds the evidence to be equally balanced does the presumption require

---

[1] The first terminal date is the date of the last previous closure or denial of such an application—here, September 6, 2005; the second terminal date is the date of the most recent closure or denial of an application to reopen a claim for aggravation—here, March 1, 2006. *Grimes v. Lakeside Indus.*, 78 Wn. App. 554, 561, 897 P.2d 431 (1995).

the findings of the board to stand. *Allison v. Dep't of Labor & Indus.*, 66 Wn.2d 263, 268, 401 P.2d 982 (1965).

¶13 WestFarm would have this court apply a standard of review that gives deference to the board's findings as well; it points to RCW 51.52.115, which provides in part that "[i]n all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same." It contends that "all court proceedings" include appeal to this court. The standard of review is critical because there was evidence in the board's record supporting the position of both parties; as a result, and as demonstrated hereafter, the question of whether our starting point is the findings of the board or the findings of the court will prove decisive.

¶14 But the presumption in favor of the board's findings provided by RCW 51.52.115 does not apply to appeal to this court because this appeal is not "under or pursuant to [Title 51 RCW]." Rather, by virtue of RCW 51.52.140 ("Appeal shall lie from the judgment of the superior court as in other civil cases."), this appeal is pursuant to RCW 2.06.030, generally providing for appellate jurisdiction in civil cases. The ordinary standards of review apply. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999). We therefore review whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the court's conclusions of law flow from the findings. *Id.* In this case, we examine whether WestFarm has demonstrated that substantial evidence does not support the trial court's findings.

¶15 Substantial evidence supports a finding when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). "A challenge to the sufficiency of the evidence admits the truth of [the opposing party's] evidence and any inference drawn therefrom and requires that the

evidence be viewed in a light most favorable to [the opposing party]." *Bott v. Rockwell Int'l*, 80 Wn. App. 326, 332, 908 P.2d 909 (1996). Credibility determinations are solely for the trier of fact and cannot be reviewed on appeal. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

¶16 When making a substantial evidence challenge, "[t]he appellant must present argument to the court why specific findings of fact are not supported by the evidence and must cite to the record to support that argument," or they become verities on appeal. *Inland Foundry Co. v. Dep't of Labor & Indus.*, 106 Wn. App. 333, 340, 24 P.3d 424 (2001). Unsupported arguments need not be considered. *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 216, 936 P.2d 1163, *review denied*, 133 Wn.2d 1022 (1997).

¶17 Reviewing WestFarm's brief with this standard of review in mind, three of its assignments of error can be read to challenge the trial court's findings with the required argument.[2] We address them in turn.

### Assignment of Error 2

¶18 WestFarm's assignment of error 2 states that "[t]he trial court erroneously based its determination on the fact that Mr. Cantu was experiencing low back pain as of the date his claim was closed." Br. of Appellant at 1. The assignment does not relate to a particular finding of fact by the trial court but to WestFarm's more general concern that

---

[2] WestFarm sets forth three other assignments of error. Its first is to the trial court's overall order, without identifying a basis for challenge distinct from its other, specific assignments. Its third assignment claims the trial court's weighing of the evidence was erroneous because it found Dr. C. Donald Williams to be more credible than Dr. Douglas P. Robinson, but we do not reweigh the evidence on appeal. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 181, 210 P.3d 355, *review denied*, 167 Wn.2d 1015 (2009); *Morse*, 149 Wn.2d at 574. Its sixth assigns error to the trial court's finding of fact 4, which provides that "[a]s of March 1, 2006, Mr. Cantu was in need of proper and necessary medical treatment proximately related to the industrial injury dated September 17, 2004," but without supporting argument. Clerk's Papers at 18. This finding appears to follow naturally from the court's findings 2 and 3. WestFarm appears to have assigned error to it protectively, predicated on the argument supporting its assignment of error to the other findings.

the trial court was led astray by its erroneous belief that it was bound by the board's finding 4, a finding that West-Farm argues was partially unsupported by the record. Following oral argument of this appeal, WestFarm moved for leave to file supplemental briefing on this issue, which we granted. We have considered the additional briefing filed by the parties in determining the appeal.

¶19 As the party aggrieved by the board's denial of his request to reopen his claim, it was Mr. Cantu who appealed the board's decision to the superior court. Before the superior court, he was required to present evidence from the record to support a reversal of the findings of fact he disagreed with. *Hanquet v. Dep't of Labor & Indus.*, 75 Wn. App. 657, 662, 879 P.2d 326 (1994), *review denied*, 125 Wn.2d 1019 (1995). Mr. Cantu did not challenge the board's finding 4. But we agree with WestFarm that the trial court was not required to treat the board's finding 4 as a verity.

¶20 RCW 51.52.110, which specifies the procedures for appealing a board decision, provides that "such worker, beneficiary, employer or other person *aggrieved by the decision and order of the board may appeal to the superior court.*" (Emphasis added.) The implication is that a party content with the board's decision and order need not, and may not, appeal. Case law supports the conclusion that a party who seeks no affirmative relief from the decision and order may not appeal for the sole purpose of challenging contested findings. *See Hanquet*, 75 Wn. App. at 664-65 (noting that a worker receiving a favorable resolution may not be able to appeal because it would not be "aggrieved"). No procedure is prescribed by statute or rule for WestFarm to assign error to particular findings of the board. Accordingly, WestFarm could be expected to do no more than what it did in this case: expressly contest the portion of the finding it believed was unsupported when arguing before the superior court. This is consistent with our own procedure; a respondent before this court is not required to file a cross appeal in order to challenge a factual finding made

below, it is required only to draw our attention to findings it challenges by assigning error in its brief. *State v. Kindsvogel*, 149 Wn.2d 477, 481, 69 P.3d 870 (2003); *State v. Bobic*, 140 Wn.2d 250, 257-58, 996 P.2d 610 (2000); RAP 5.2(f).

¶21 In his supplemental briefing of this issue, Mr. Cantu now concedes that WestFarm was entitled to respond to his appeal in the superior court by presenting evidence to support reversal of board findings with which it disagreed. He argues that the trial court did not err, however, because it "held all parties to the correct burden of proof" with respect to the findings it attacked. Resp't's Suppl. Br. at 3. The record does not support Mr. Cantu's position, however; it suggests, as WestFarm contends, that the trial court felt bound by the board's finding 4.

¶22 While the trial court erred in this regard, the question remains whether its error was harmless. *Carnation Co. v. Hill*, 115 Wn.2d 184, 187, 796 P.2d 416 (1990) (self-insured employer showed no prejudice from trial court's erroneous exclusion of exhibits); *Boeing Co. v. Key*, 101 Wn. App. 629, 634, 5 P.3d 16 (2000) (jury instruction was not prejudicial even if erroneous), *review denied*, 142 Wn.2d 1017 (2001). WestFarm contends that the error was not harmless given the trial court's statements in its decision that "[m]y analysis of the testimony may very well have been different had it not been for the undisputed finding that Mr. Cantu had been experiencing low back pain as of the date his claim was closed," and "I must assume [Mr. Cantu] was experiencing back pain, because that is what the Board found." Clerk's Papers (CP) at 25.

¶23 While the trial court's analysis might have been different, we see no basis for believing that its decision and order would have been different given the balance of its findings and conclusions. The board's finding had no direct bearing on Mr. Cantu's right to reopen because Mr. Cantu was not required to show that any particular medical condition existed at the time of his claim's closure. Rather,

as explained by the trial court, back pain existing on September 6 was deemed relevant because "if I have to start from that point [that Mr. Cantu was experiencing back pain at the time of claim closure,] it's a smaller step that they have to make than it is if I start from the point of assuming there is no back pain." RP at 37.

¶24 If bound by a board finding that Mr. Cantu was experiencing low back pain on September 6, it became a simple matter for the trial court to reject WestFarm's position, which was predicated on Mr. Cantu's back pain as being attributable solely to the yard work performed two weeks later, on September 20. As straightforwardly explained to WestFarm's lawyer by the court, "Here's my problem with it. You're asking me to find that the low back pain didn't develop until he was working in his yard or whatever because that's what Dr. Harrington says. If I have to start with the fact that he had the back pain when the claim was closed then that causes a problem for that argument." RP at 46. But while the board's finding made it a particularly simple matter to reject WestFarm's position, the trial court's remaining findings suggest that it ultimately did not change the result.

¶25 WestFarm never disputed the fact that Mr. Cantu testified to the board that he was experiencing back pain, albeit more limited pain, at the time his claim was closed. *See* RP at 21-22 ("[T]hat's what he says when he testifies at the Board of Industrial Insurance Appeals"; "[T]hat finding can only be based on Mr. Cantu's statement at the Board when he testified"; "[L]et's put it this way, it's consistent with what Mr. Cantu said when he testified at the Board."). It argued only that the board's finding was not supported by medical records or by the medical providers' testimony and that Mr. Cantu's testimony was suspect. WestFarm also did not dispute the sufficiency of the evidence to support the remainder of the finding that Mr. Cantu had been experiencing pain and numbness in his left leg, limping due to the left knee pain, and suffering from peroneal nerve palsy on the left side prior to closure of the claim.

¶26 WestFarm's position below and on appeal is entirely predicated, one way or the other, on arguments that Mr. Cantu is not worthy of belief. It contends that his testimony is not credible; that his medical providers' diagnoses are not reliable to the extent they depend on Mr. Cantu's reported history and symptoms; and that the opinion of its mental health expert, Douglas P. Robinson, MD, was more reliable than that of Mr. Cantu's expert, C. Donald Williams, MD, because only Dr. Robinson disbelieved Mr. Cantu. Yet the trial court chose to accept the testimony of Dr. Harrington and Dr. Williams. Moreover, Dr. Harrington did not attribute the more intense back pain that Mr. Cantu reported experiencing after his claim was closed to any mild, preexisting back pain. Rather, he attributed it to Mr. Cantu's preexisting knee pain and limp, portions of finding 4 that WestFarm did not dispute below.

¶27 Because the evidence supported the trial court's ultimate findings and conclusions regardless of whether Mr. Cantu was experiencing mild low back pain on and before September 6, 2005, we cannot see how the trial court's unwarranted deference to that part of the board's finding 4 would have changed the trial court's decision. *See Dalton v. State*, 130 Wn. App. 653, 670, 124 P.3d 305 (2005) (supportive evidence was ample even without erroneously excluded evidence given other evidence credited by the court), *review denied*, 158 Wn.2d 1003 (2006).

*Assignment of Error 4*

¶28 WestFarm's fourth assignment of error challenges the trial court's finding of fact 2, which found that Mr. Cantu's condition objectively worsened and became aggravated between September 6, 2005 and March 1, 2006. WestFarm claims that "the record is devoid of any medical opinion/evidence that Cantu's back pain at the time of claim closure objectively worsened." Br. of Appellant at 33. Yet in presenting evidence for the trial court's de novo review,

WestFarm candidly and more accurately acknowledged that the credibility of Mr. Cantu, the providers, and the experts, rather than a lack of supporting evidence on either side, was the key issue in deciding the reopening of his claim. RP at 24-26.

¶29 Here, Dr. Harrington's testimony suffices. Among his testimony supporting an objective worsening of the back pain is the following:

Q. Based on your years of chiropractic training and experience, your months of examination and treatment of Mr. Cantu, . . . do you have an opinion, then, as to whether Mr. Cantu's condition worsened between September 6, '05, when the claim was first closed, and March 1 of 2006, when the application to reopen was denied?

A. Yes.

Q. And what is that opinion?

A. That it's significantly worsened.

Q. And on what objective findings do you base that determination?

A. The reduced painful spinal range of motion, the palpatory findings of joint fixation, myotension inflammation, also the radiographic findings of misalignment that are consistent with his examination, and, obviously, his subjective notation of the left knee dysfunction leading to the pain and discomfort.

CABR, Dep. of Dr. Harrington at 19-20. Mr. Cantu and his wife also testified that his condition worsened during this period. This is sufficient evidence to support the trial court's finding that Mr. Cantu's condition objectively worsened and became aggravated between September 6, 2005 and March 1, 2006.

### Assignment of Error 5

¶30 Finally, WestFarm assigns error to the trial court's finding of fact 3, which states that "Mr. Cantu did develop and suffers from a depressive disorder and a pain disorder

with both psychological factors and general medical condition proximately related to his industrial injury dated September 17, 2004." CP at 18. The parties agree that a claim can be reopened where a claimant develops a mental health problem that was not present when the claim closed but that is shown to be causally related to the workplace injury. RP at 38-40.

¶31 Mr. Cantu presented the testimony of Dr. Williams, a board-certified psychiatrist, who conducted an independent psychiatric evaluation of Mr. Cantu on September 5, 2006. Dr. Williams found that Mr. Cantu displayed eight of the nine criteria for a diagnosis of a major depressive episode, when only five need be found to support such a diagnosis. He also diagnosed a pain disorder associated with both psychological factors and a general medical condition. Dr. Williams concluded that both disorders resulted from Mr. Cantu's workplace injury.

¶32 WestFarm presented the testimony of Dr. Robinson, also a psychiatrist, who examined Mr. Cantu after Dr. Williams. He concluded that Mr. Cantu did not have a psychiatric condition but was feigning a condition for financial gain.

¶33 The trial court found Dr. Williams to be the more credible expert because his testimony was corroborated by the lay witnesses and because the court felt that Dr. Robinson was incorrect to disbelieve Mr. Cantu's description of his pain.

¶34 WestFarm admits there was a battle of experts as to this question but undertakes to persuade us that the trial court erred in giving greater weight to Dr. Williams' findings than to Dr. Robinson's. Br. of Appellant at 34. Even if persuaded that we would have weighed the experts' testimony differently, we do not review the trial court's credibility determinations. Substantial evidence supports the court's finding.

*Attorney Fees*

¶35 Mr. Cantu requests attorney fees on appeal. RCW 51.52.130 provides that reasonable attorney fees shall be awarded to a worker "in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained." Such is the case here. Because we affirm the trial court, we award Mr. Cantu attorney fees upon his compliance with RAP 18.1.

¶36 Affirmed.

KULIK, C.J., and KORSMO, J., concur.