IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SEATTLE CHILDREN'S HEALTHCARE,<br><br>                    Respondent,<br><br>          v.<br><br>TONYA JILBERT,<br><br>                    Appellant. | No. 86753-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — Tonya Jilbert, an employee of Seattle Children's Healthcare (SCH), suffered an injury while helping a patient. The Board of Industrial Insurance Appeals (Board) found SCH was responsible for the aggravation of her urological and proctological conditions. Following a review of the record, the superior court disagreed and reversed the Board. We reverse the court because its finding that the injury did not aggravate the condition is unsupported by substantial evidence.

## I.          BACKGROUND

SCH employed Jilbert as a medical assistant in one of its clinics. In April 2018, Jilbert injured her back when assisting a patient who was falling from an examination table. This industrial injury dislodged Jilbert's spinal stimulator and resulted in a spinal hematoma requiring two surgeries in June 2018. The

stimulator had been inserted to relieve pain related to multiple prior surgeries on her back in 2015 and 2016, after a disc collapsed. Contemporaneously, she had had some incontinence issues.

Jilbert filed a claim for benefits pursuant to the Industrial Insurance Act (IIA), Title 51 RCW. The Department of Labor and Industries (L&I) allowed Jilbert's claim, but later denied the condition which is the subject of this appeal. Namely, in February 2022, L&I found SCH was "not responsible for" Jilbert's conditions diagnosed, inter alia, as "neurogenic bladder because it was not caused *or aggravated* by the industrial injury . . . for which this claim was filed." (Emphasis added.) L&I affirmed its order two months later.

Jilbert appealed to the Board. The Board heard testimony from Jilbert as well as four doctors, Dr. Brian Kim, Dr. Robin Lee, Dr. John Bak, and Dr. Linda Wray; the first two of whom were Jilbert's treating physicians, and the latter two retained by L&I.

In May 2023, an administrative law judge (ALJ) issued an order proposing to reverse L&I's order. This proposed order found, in pertinent part, that "Jilbert's history of incontinence before the 2018 industrial injury was relatively limited and consistent with her various conditions and situations during those time periods" and that "there was an increase in incidents following the 2018 industrial injury and the surgeries performed to repair the 2018 industrial injuries." In July 2023, the Board adopted the ALJ's proposed order, reversed L&I's denial, and denied SCH's petition for review.

SCH appealed to the superior court. After a bench trial on the administrative

2

record, in April 2024, the court reversed the Board's order and remanded with instructions for L&I to deny Jilbert's claim as to her various conditions. Jilbert unsuccessfully moved for reconsideration and now appeals.

## II. ANALYSIS

### A. Substantial Evidence as to the Absence of Aggravation

Jilbert argues the superior court's order suffered from a "dearth of evidence supporting its conclusion" that the 2018 "injury did not cause or aggravate Ms. Jilbert's condition." She claims that the record supports only the conclusion that the injury and its subsequent "neurosurgeries" caused the aggravation of her incontinence from effectively asymptomatic in 2017 to "the sudden and precipitous emergence of severe symptoms" in 2018.

"The IIA governs judicial review of workers' compensation determinations." Perez v. Dep't of Labor & Indus., 28 Wn. App. 2d 916, 921, 542 P.3d 584 (2023). "The superior court reviews de novo the Board's decision, based only on the administrative record and evidence presented to the Board." Id. (citing RCW 51.52.115). As it pertains to the superior court, the "Board's decision is considered prima facie correct, and the opposing party must support its challenge by a preponderance of the evidence." Id. (citing RCW 51.52.115). We then "review the decision of the superior court rather than the decision of the Board." Id.

Per the IIA, we apply "the ordinary standard of review for civil appeals." Id. (citing RCW 51.52.140); Cantu v. Dep't of Labor & Indus., 168 Wn. App. 14, 21, 277 P.3d 685 (2012) (clarifying the above presumption of correctness does not apply to appeals from the superior court). "We review 'whether substantial

evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings.'" Perez, 28 Wn. App. 2d at 921 (quoting Rogers v. Dep't of Lab. & Indus., 151 Wn. App. 174, 180, 210 P.3d 355 (2009)). "'Substantial evidence' is evidence 'sufficient to persuade a fair-minded, rational person of the truth of the matter.'" Id. (quoting Potter v. Dep't of Lab. & Indus., 172 Wn. App. 301, 310, 289 P.3d 727 (2012)).

"We review the record in the light most favorable to the party who prevailed in superior court," here SCH. Id. "We do not reweigh the evidence," Perez, 28 Wn. App. 2d at 921, and "credibility determinations remain solely for the trier of fact in a workers' compensation claim," Zavala v. Twin City Foods, 185 Wn. App. 838, 869, 343 P.3d 761 (2015).

The superior court found, and Jilbert challenges, that a "fair preponderance of credible and persuasive evidence shows that neither the industrial injury of April 3, 2018, nor its sequelae[1] caused *or aggravated* Ms. Jilbert's neurogenic bladder, urinary incontinence, and/or fecal incontinence."

Under the IIA, a "worker is entitled to benefits if the employment either causes a disabling disease, *or aggravates* a preexisting disease so as to result in a new disability." Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 6, 977 P.2d 570 (1999) (emphasis added); see also Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 472, 745 P.2d 1295 (1987) (noting compensation is warranted "where a sudden injury 'lights up' a quiescent infirmity.") (quoting Harbor Plywood Corp. v.

---

[1] Merriam-Webster defines "sequelae" as an "aftereffect of a[n] . . . injury" or "a secondary result." MERRIAM-WEBSTER ONLINE DICTIONARY (last visited May 23, 2025) https://www.merriam-webster.com/dictionary/sequela.

Dep't of Labor & Indus., 48 Wn.2d 553, 556, 295 P.2d 310 (1956)).  Thus here, to deny benefits, the court's order must be supported by substantial evidence showing a lack of aggravation of a preexisting disease resulting in a new disability.  Ruse, 138 Wn.2d at 6.  We hold the court's finding on a lack of aggravation is unsupported by substantial evidence.

Both of the expert witnesses retained by L&I—Dr. Bak and Dr. Wray—testified that Jilbert had documented incontinence issues prior to the 2018 industrial injury.  Dr. Bak, for his part, agreed he reviewed "some records that predate [Jilbert's] injury" and "some records post-injury."  However, he did not otherwise offer an opinion on how her condition may have changed before and after the industrial injury.  At most, he stated he "did not see" any complaints in Jilbert's records of "urinary or bladder incontinence between the industrial injury and the date of her surgery to repair the spinal cord stimulator."

Dr. Wray, in turn, testified repeatedly that she could not provide an opinion on how Jilbert's condition evolved in relation to the industrial injury.  More specifically, Dr. Wray asserted that she was not "able to reach an opinion on a more probable than not basis one way or the other in terms of whether the claimant's 2018 injury or its residuals proximately caused *or aggravated* her bladder condition."  (Emphasis added.)  Further, in discussing Jilbert's "current symptoms" after her second surgery in 2018, Dr. Wray stated, "I don't know of any way to distinguish what's doing what in this case" from earlier procedures and treatment.  Dr. Wray also testified that she did not "know if [Jilbert's bladder problems] were more significant but she did have bladder problems" of the "same

*type*" before the 2018 surgeries.  (Emphasis added.)  Dr. Wray also responded "I don't know," when asked if Jilbert's incontinence issues "were much more frequent after the surgery."

In other words, while Dr. Wray certainly discussed her opinion on the potential causes of Jilbert's incontinence, she declined to offer an opinion whether the industrial injury increased or aggravated Jilbert's incontinence issues between the time periods of 2017 and 2018.  Even more clearly, nowhere did she offer an opinion on whether that increase in frequency resulted in a new disability.  Thus, neither expert witness retained by L&I provided any evidence—let alone substantial evidence—supporting the superior court's determination that the 2018 "injury did not cause or aggravate Ms. Jilbert's condition."

In contrast, Jilbert's treating physicians, Dr. Kim and Dr. Lee, testified as to how Jilbert's condition developed following her industrial injury.  For example, Dr. Kim explained in "terms of regular incontinence and regular weakness and falls recurrently, no, she did not report that prior to the injury."  Dr. Lee further explained "[i]t was noted that her symptoms were significantly exacerbated after" the second surgery in 2018 and "at that particular point her symptoms got worse."  Dr. Lee further explained that it was possible Jilbert had a neurogenic bladder prior to 2018, but that, following "an improvement of her urinary symptoms after her 2017 surgeries, "all of a sudden she had the surgery in 2018 and then her symptoms got worse at that point."  Both doctors offered their opinions on a more-probable-than-not basis.

Thus, even when we "review the record in the light most favorable" to SCH

6

and refrain from "reweigh[ing] the evidence" as we must, Perez, 28 Wn. App. 2d at 921, the record does not contain "evidence 'sufficient to persuade a fair-minded, rational person'" that Jilbert's condition was not aggravated by the 2018 industrial injury. Id. (quoting Potter, 172 Wn. App. at 310). To the contrary, the unrebutted testimony of Jilbert's treating physicians supports the opposite conclusion.

In response, SCH first asks us to assess the credibility of each witness or reweigh the evidence, neither of which we may do. Perez, 28 Wn. App. 2d at 921; Zavala, 185 Wn. App. at 869. SCH asks this court, for example, to compare the various physicians' specializations, the documents they revised and relied upon, and the clarity of their opinions. See, e.g., Br. of Resp't at 26-27 (contrasting the "strength" of Dr. Lee's testimony with the "most persuasive" opinion of Dr. Wray). That is not our role. We are not assessing here whether the Board had substantial evidence supporting its conclusions, but whether the trial court did in reversing the Board. Perez, 28 Wn. App. 2d at 921. And tellingly, SCH acknowledges that Dr. Wray "testified that it is not medically possible to say on a more-probable-than-not basis that the claimant's condition was or was not caused or aggravated by the injury." Without such testimony, there is no basis to conclude, as the court did, that the injury was not so aggravated.[2]

---

[2] Relatedly, SCH argues that, because "Dr. Wray's opinion that the cause cannot be determined on a more-probable-than-not basis" and "the condition is equally possible to have been caused or aggravated by something else, . . . it must be denied." This argument appears to reference, but misunderstands, the presumption of correctness described in Cantu which holds, "[o]nly if it finds the evidence to be equally balanced does the presumption require the findings of the board to stand." 168 Wn. App. at 20-21 (emphasis added). This presumption does not apply to appeals from the superior court. Id. at 21.

SCH next asks us to assess the potential causes of Jilbert's conditions. SCH asserts that Jilbert "seems fixated on the lack of documented episodes of incontinence between February 2017 and June 2018" while ignoring her "documented episodes in 2014, 2015, 2016, and 2017." But the reason Jilbert is focused on the differences between 2017 and 2018 is because that is the gravamen of her complaint: even assuming the, e.g., neurogenic bladder condition existed prior to 2018 and caused by prior surgeries (or a myriad of other factors), her claim is that it was asymptomatic in February 2017 and "lit up" by the subsequent surgeries. Nothing in SCH's argument on causation addressed the alternate basis of aggravation. Ruse, 138 Wn.2d at 6.[3]

For the reasons above, we hold the court's finding that "neither the industrial injury . . . . nor its sequelae caused or aggravated Ms. Jilbert's neurogenic bladder" or "incontinence" is unsupported by substantial evidence. Perez, 28 Wn. App. 2d at 921. In turn, we reverse the superior court's order denying benefits.

B. Attorney Fees

Jilbert asserts she is entitled to attorney fees on appeal under RCW 51.52.130(1), which mandates that this court "shall" award attorney fees, if "on appeal to the . . . appellate court from decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary."

---

[3] As we hold the court's findings of fact were unsupported by substantial evidence, we need not "'then review, de novo, whether the trial court's conclusions of law flow from the findings.'" Perez, 28 Wn. App. 2d at 921 (quoting Rogers, 151 Wn. App. at 179).

In short, "'RCW 51.52.130(1) requires a court to award a worker attorney fees if he or she *improves their position* on appeal.'" Clark County v. Maphet, 10 Wn. App. 2d 420, 444, 451 P.3d 713 (2019) (emphasis added) (quoting Masco Corp. v. Suarez, 7 Wn. App. 2d 342, 352, 433 P.3d 824 (2019)); see also Brand v. Dep't of Labor & Indus., 139 Wn.2d 659, 669-72, 989 P.2d 1111 (1999) (applying the mandate of liberal construction of the IIA to RCW 51.52.130 and holding that "reducing a worker's award of attorney fees based on the worker's degree of success is inconsistent with the purposes behind RCW 51.52.130 and the [IIA] as a whole.").

In light of the above authorities, we reject SCH's narrow interpretation of RCW 51.52.130, wherein it avers that Jilbert is not entitled to relief because a "reversal of the order" would, to SCH, not include a "grant of additional relief." Our conclusion certainly "improves" Jilbert's position, as she is now entitled to the benefits denied to her by the trial court's order. Maphet, 10 Wn. App. 2d at 444; cf. Conner v. Harrison Med. Ctr., 11 Wn. App. 2d 467, 471, 473-76, 454 P.3d 131 (2019) (contrasting matters where fees were denied because L&I only needed to determine entitlement to benefits "some time in the future" or the court "did not order a remand or adjustment of her benefits" as opposed to when a "reversal results in an increased payment to the claimant" and thus "attorney fees are recoverable.").

As we reverse the superior court's order, we also reverse its attorney fee and cost award contained therein. After all, RCW 4.84.010, RCW 4.84.030, and RCW 4.84.090 require the award go to the "prevailing party." Further, RCW

9

4.84.190, which applies "where no provision is made for the recovery of costs," is inapplicable, whereas here RCW 51.52.120 provides for fees before L&I and the Board and RCW 51.52.130 provides for fees on appeal thereafter.

## III.     CONCLUSION

We reverse and vacate the superior court's order, reinstate the Board's decision, and remand this matter to L&I to order SCH to accept responsibility for the conditions described herein.  And pursuant to RAP 14.1(c) and (6), the parties are directed to the commissioner of this court to perfect the award of fees and costs on appeal.

Díaz, J.

WE CONCUR:

Feldman, J.                    Colburn, J.