[No. 33421-6-II. Division Two. July 11, 2006.]

ROBERT WATSON, *Respondent*, v. THE DEPARTMENT OF LABOR
AND INDUSTRIES, *Appellant*.

*Carol L. Casey*, for appellant.

*Robert M. McKenna, Attorney General*, and *Pat L. De Marco, Assistant*, for respondent.

¶1 BRIDGEWATER, J. — The Department of Labor and Industries (Department) appeals a superior court order requiring it to recalculate Robert Watson's monthly wages for time loss compensation under RCW 51.08.178(1). The Department had initially classified Watson as an essentially intermittent employee and calculated his wages according to RCW 51.08.178(2). We hold that there was substantial evidence to support the trial court's findings that, although Watson's work history revealed he had only worked seasonally at the Port Ludlow Golf Course, Watson intended to work full time and therefore could not be classified as an essentially intermittent worker. We affirm the superior court's order and award attorney fees to Watson.

## FACTS

¶2 From 1999 to 2002, Robert Watson worked at the Port Ludlow Golf Course as a greenskeeper. The golf course had

a permanent staff that included one greenskeeper. Each spring, as the golf season began, the course hired additional seasonal greenskeepers.[1] Every fall, as the season wound down, the course would "gear-down" and lay off the seasonal greenskeepers, retaining a skeleton crew for the winter. Board R. Tr. (BRT) at 20.

¶3 In 1999, 2000, and 2001, Watson began work at the golf course in the spring and left in the fall, in late October or early November. He testified that when he was laid off, he collected unemployment benefits. Lorraine Hamada, the human resources assistant for Watson's employer, Port Ludlow Associates, confirmed that Watson collected unemployment in 2002.

¶4 On August 16, 2002, Robert Watson injured his back while working and filed a claim for workers' compensation benefits. The Department allowed the claim and, under RCW 51.08.178(2), calculated Watson's wages for lost time compensation by dividing his yearly income by 12 to derive a monthly wage. The Department based its calculation on the $5,801.69 in wages that Watson earned from July 1, 2001 to June 3, 2002. From that, the Department derived a monthly wage of $483.47, or 1/12 of $5,801.69.

¶5 Watson appealed the Department's method of calculating his monthly wage, contending that the Department should have applied RCW 51.08.178(1) and determined his monthly wage by multiplying his daily wage by the number of days he worked in a month. Under this method, his monthly wage would be $1,540, for a yearly income of $18,480.[2]

¶6 The industrial insurance appeals judge (IAJ) affirmed the Department's method of calculating Watson's wages. In its conclusions of law, the IAJ determined that Watson was

---

[1] Although the trial court refers to Watson as a groundskeeper, his employer called his position a "greenskeeper." Certified Appeal Board R. at 1.

[2] Although the superior court's order does not specify these numbers, in its brief the Department produced these figures after recalculating Watson's wages under RCW 51.08.178(1). We assume the numbers are accurate. Br. of Appellant at 29.

a "seasonal" worker under RCW 51.08.178(2)(a). Certified Appeal Board R. (CABR) at 18. In his findings of fact and discussion portions of the opinion, however, the IAJ found that Watson's relationship to his job was "essentially part-time or intermittent" under RCW 51.08.178(2)(b). CABR at 17.

¶7 Watson appealed to the Board of Industrial Insurance Appeals (BIIA), which denied his petition and adopted the IAJ's decision as its final order. Watson then appealed to the superior court, which reviewed the BIIA's decision de novo. The superior court entered several findings of fact, including the following:

> 4. The nature of employment as a groundskeeper at a golf course is not such that it is "essentially part-time or intermittent."
>
> . . . .
>
> 6. Robert Watson's intent was to work full-time year-round.
>
> . . . .
>
> 10. Robert Watson always looked for employment when he was not working for the golf course. Mr. Watson's intent was to work fulltime [sic] and he either worked or was looking for work.
>
> 11. During all periods involved in the year Robert Watson was either employed full-time or he was looking for work.

Suppl. Clerk's Papers (SCP) at 3-4.

¶8 Based on these factual findings, the superior court determined that the BIIA erred in calculating Watson's monthly wage under RCW 51.08.178(2)(b). The superior court therefore ordered the Department to recalculate Watson's monthly wage under RCW 51.08.178(1) as Watson originally requested. The Department appeals.

## ANALYSIS

### I. Findings of Fact

¶9 The Department first argues that the record does not support the trial court's finding that Watson intended to

work full time year-round. It asserts that Watson's testimony that he wanted to work full time and that he collected unemployment benefits is insufficient to establish Watson's intent.

¶10 In industrial insurance cases, the superior court conducts a de novo review of the BIIA's decision but relies exclusively on the certified board record. RCW 51-.52.115; *Gallo v. Dep't of Labor & Indus.*, 119 Wn. App. 49, 53, 81 P.3d 869 (2003), *aff'd*, 155 Wn.2d 470, 120 P.3d 564 (2005). The BIIA's findings and decision are prima facie correct and the worker challenging the BIIA's decision has the burden of proof. *Gallo*, 119 Wn. App. at 53-54.

¶11 We review the superior court's decision under the ordinary standard of review for civil cases. RCW 51-.52.140. We review whether substantial evidence supports the trial court's factual findings and then review, de novo, whether the trial court's conclusions of law flow from the findings. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999). Substantial evidence will support a finding when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Credibility determinations are solely for the trier of fact and cannot be reviewed on appeal. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

¶12 Here, the trial court found that Watson intended to work full time, that he was always looking for work, and that he was either working or on unemployment. Watson's testimony in front of the IAJ indicated:

Q. Okay, Was—had it always been your desire just to work part of the year round, or—

A. No. I'm—I'm wanting full-time work ever since I started there. I was always going in for that.

Q. Was there some discussion by management at that meeting that led you to believe in any way that your job was going to be year-round?

A. Sure. They had a—they said that everything was changing. There was new people coming in; new jobs; people were going to full-time more. They was hiring—they were just going to hire new people to do all kinds of things there.

BRT at 10-11. Watson also testified:

Q. Okay. During this—parts of time when you worked for the golf course out there before your injury, at off season did you get other work to keep yourself busy and make some income? At times.

A. Unemployment, mostly. I didn't . . . .

BRT at 38-39. Other than these two exchanges, Watson did not testify about his intent to work full time or what work, if any, he found during the times that he was laid off from the golf course.

¶13 In opposition, the Department introduced an employment history from the State's Employment Security Department indicating that other than the golf course, Watson reported no income from 1999 to 2002. And Watson's employer and supervisor both testified that they hired Watson as a seasonal worker in 2002 and that they intended to lay him off in October.

 ¶14 But a reasonable trier of fact could interpret Watson's testimony that he was always trying to get full-time work to mean he intended to work full time. The Department suggests that we should discount Watson's testimony because it is self-serving. But whether self-serving testimony should be discounted is a credibility issue for the trier of fact, and we will not review it. *Morse*, 149 Wn.2d at 574. Watson's testimony, therefore, provides substantial evidence to support the trial court's finding that Watson intended to work full time year-round.

██ ¶15 Watson also testified that when he was laid off, he "mostly" collected unemployment. BRT at 39. And his employer confirmed that he received unemployment benefits in 2002. A reasonable trier of fact could infer from these facts that in at least the year before his injury,

Watson consistently collected unemployment and that he was either working or collecting unemployment.

¶16 The Department also challenges the trial court's finding that Watson was always looking for work. Watson argues that a reasonable trier of fact could infer from his unemployment benefits that he was looking for a job. The Department points out that the unemployment benefits statute requires the State to terminate benefits if an individual does not apply for suitable work when directed by the employment office. RCW 50.20.080. Moreover, the State has authority to waive the work search requirement under RCW 50.20.010(1)(a). But there is no evidence that the State waived Watson's search requirement. We can infer from the unemployment statutory scheme that there is a general requirement that individuals look for work in order to receive benefits. And because Watson testified that he received unemployment, a reasonable trier of fact could infer that he complied with the general requirement by looking for work. Therefore, substantial evidence supports the trial court's finding of fact that Watson was looking for work when not at the golf course.

## II. Intermittent Employment

¶17 The Department next argues that even if Watson intended to work full time, he still should be classified as having an essentially part time or intermittent relationship to his employment under RCW 51.08.178(2)(b). Watson responds that because he intended to work full time, he cannot be classified as having an essentially intermittent relationship to work.

¶18 We must determine if the trial court's factual finding supports its conclusion of law that the Department could not apply RCW 51.08.178(2)(b) to calculate Watson's monthly wages. Whether a statute applies to a set of facts is a conclusion of law that we review de novo. *Wynn v. Earin*, 131 Wn. App. 28, 41, 125 P.3d 236 (2005). The Industrial Insurance Act, Title 51 RCW, is remedial and we

construe it liberally, resolving doubts in favor of the worker. *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997).

¶19 The industrial insurance statute defines monthly wages used to calculate benefits in RCW 51-.08.178. That provision describes two methods for calculating monthly wages. The first, contained in subsection (1), requires the Department to compute a worker's monthly salary by multiplying the worker's daily wage at the time of injury and number of hours worked. RCW 51.08.178(1). The statute provides that this provision "shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned." RCW 51.08.178(1). It is, therefore, the default provision.

¶20 The second method, at issue here, is described as:

> In cases where (a) the worker's employment is exclusively seasonal in nature or (b) *the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent*, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.

RCW 51.08.178(2) (emphasis added).

¶21 Our Supreme Court interpreted the phrase "essentially part-time or intermittent" in *Department of Labor & Industries v. Avundes*, 140 Wn.2d 282, 285, 996 P.2d 593 (2000). The court adopted a two-part test that looks first to the type of work being performed, and second, to the relationship of the worker to the employment. *Avundes*, 140 Wn.2d at 287. Even if the type of work is not essentially intermittent, RCW 51.08.178(2)(b) still applies if the worker's relationship to his employment is essentially intermittent. *Avundes*, 140 Wn.2d at 290.

¶22 The first element is not contested here. The trial court entered a finding of fact that groundskeeper's work is not essentially intermittent because there were full-

time groundskeepers at the golf course. The Department does not challenge this finding and it is, therefore, a verity on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). Accordingly, we are constrained to find that the type of work being performed was not essentially intermittent and must reach the second prong of the test. *See Avundes*, 140 Wn.2d at 288.

¶23 To determine if a worker's relationship to his employment is essentially intermittent, we consider four factors: (1) the nature of the work, (2) the worker's intent, (3) the worker's relation with the current employer, and (4) the worker's work history. *Avundes*, 140 Wn.2d at 287. Avundes was a general farm laborer who was injured while cutting asparagus. *Avundes*, 140 Wn.2d at 284. He had been cutting asparagus for only 50 days. *Avundes*, 140 Wn.2d at 284. But in the previous 14 months, he had worked 19 different jobs, working on each project until it was complete. *Avundes*, 140 Wn.2d at 285. And the parties stipulated that Avundes intended to secure full-time work throughout the year. *Avundes*, 140 Wn.2d at 285.

¶24 On these facts, our Supreme Court found three of the four factors were in favor of the worker. *Avundes*, 140 Wn.2d at 288. The Department failed to challenge the trial court's finding that the nature of Avundes's work as a general farm laborer was not intermittent. *Avundes*, 140 Wn.2d at 288. Avundes intended to be a full-time worker, and the court reasoned that Avundes's work history, though spotty, was not enough to classify him as an intermittent worker. *Avundes*, 140 Wn.2d at 285, 288-90. The only missing element—his relation with his current employer— could not be weighed because there was "no evidence of employer expectations." *Avundes*, 140 Wn.2d at 288.

¶25 Because we are constrained to accept the trial court's findings, we are faced with a situation in which two of the *Avundes* factors—Watson's intent and the nature of his work—weighs against classifying him as an intermittent employee. He intended to work full time and his job was not essentially intermittent. Against that, we have the

fact his employer hired and treated him as an intermittent, seasonal employee. But Watson's work history is ambiguous. Avundes had a history of serial employment so that even though he worked only a short time for each employer, his overall employment was somewhat consistent. *Avundes*, 140 Wn.2d at 285. Unlike in *Avundes*, Watson does not have a history of serial employment. We must therefore determine how to weigh Watson's work history.

¶26 The Department argues that Watson's work history indicates a pattern of seasonal work with definite starting and stopping points and that *Avundes* does not apply to such a situation. In *School District No. 401 v. Minturn*, we reasoned that assuming no off-season job, a school bus driver who worked nine months of every year was "clearly" an intermittent employee. 83 Wn. App. 1, 6, 920 P.2d 601 (1996). We defined an intermittent job as one that "may be full-time, extra-time or part-time and has definite starting and stopping points with recurring time gaps." *Minturn*, 83 Wn. App. at 6. The Department asserts that like Minturn, Watson had no other employers and therefore his job had starting and stopping points with recurring time gaps. Thus, the Department's position turns on considering Watson solely as an intermittent golf course employee.

¶27 But Watson asks us to consider him as a general manual laborer who could only consistently find work at the golf course. He would have us infer from his unemployment benefits that he looked for other work in the winter months but was unable to find it. For support, he cites to *Avundes*, where our Supreme Court rejected an approach that penalized "those who have had temporary bad fortune in finding a job." *Avundes*, 140 Wn.2d at 289. Watson argues that we should similarly not punish him for being unsuccessful thus far in being hired permanently at the golf course or finding some other general labor job in the winter months.

¶28 In deciding how to weigh Watson's work history, we must consider the purpose of the workers' compensation statute. In *Avundes*, the court reasoned that al-

though Avundes had worked as an asparagus cutter for only 50 days, he should not be punished for irregular or inconsistent work history. *Avundes*, 140 Wn.2d at 288 (citing *Dep't of Labor & Indus. v. Avundes*, 95 Wn. App. 265, 276-77, 976 P.2d 637 (1999)). Our Supreme Court explained that the proper analytical focus is on the worker's lost earning capacity, not his work history. *Avundes*, 140 Wn.2d at 289-90 (citing *Double D Hop Ranch*, 133 Wn.2d at 798).

¶29 Here, Watson's recent work history indicates that he could find work for only part of each year. But while Watson did not have luck in previous years, he had the capacity to find full-time work. Accepting the trial court's findings, Watson was always trying to find such work. Because the focus is on a worker's earning capacity, we construe Watson's employment history combined with the trial court's finding that Watson sought work and received unemployment to favor Watson.

¶30 Given that we are supposed to construe the Industrial Insurance Act liberally and resolve doubts in favor of the worker, we hold that where a worker intends to work full time year-round, performs general labor that is not seasonal, looks for work year-round, but is currently employed in a seasonal job, his relationship to work is not "essentially part-time or intermittent." Therefore, the trial court was correct in finding that RCW 51.08.178(2)(b) did not apply. The Department should have applied the default provisions from RCW 51.08.178(1) to calculate Watson's monthly wages for the purposes of time-loss compensation. The trial court did not err.

¶31 The Department asks us to emphasize the worker's objective work history over the worker's efforts to find a full time position. Our Supreme Court rejected this approach in *Avundes*, where the court indicated that a purely objective analysis of work history was inappropriate. *Avundes*, 140 Wn.2d at 289-90. The Department's position here would privilege work history over intent and raise the possibility that the workers' compensation scheme might penalize people who have had bad luck finding full-time work. This

approach is not consistent with the purpose of time-loss compensation to reflect a worker's lost earning capacity. *Double D Hop Ranch*, 133 Wn.2d at 798.

¶32 The Department argues that the result would give Watson a windfall because his time-loss compensation would exceed his yearly earnings for the three years he worked at the golf course. It argues that such a windfall contravenes the statutory intent.

¶33 As a practical matter, allowing a worker to avoid classification as an intermittent employee by falsely testifying that he intended to find more permanent work would undermine the statute's basic scheme. Here, however, we have the trial court's express finding that Watson was trying to find work. We leave it to the trier of fact to determine that such testimony is false. And ultimately, the Department's argument that this creates a windfall merely repeats the Department's position that we should consider Watson as an intermittent golf course employee who worked only part of the year. We might also view him as a general laborer whose earning capacity was higher than he managed to actually earn the past three years. Because the legislature's intent was to reflect a worker's earning capacity rather than the worker's average yearly salary, the Department's argument fails.

## III. Attorney Fees

¶34 Both the Department and Watson agree that Watson should be awarded reasonable attorney fees under RCW 51-.52.130. The first sentence of that statute authorizes attorney fees if the Department's order is reversed, modified, or additional relief is granted. RCW 51.52.130. The fourth sentence of RCW 51.52.130 authorizes attorney fees when the Department appeals and we affirm the superior court's

order. Because we affirm the trial court, we award Watson attorney fees upon his compliance with RAP 18.1.

¶35 Affirmed.

VAN DEREN, A.C.J., and HUNT, J., concur.