**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| CHARLES J. NAKANO, | No. 42642-1-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| DEPARTMENT OF LABOR & INDUSTRIES FOR THE STATE OF WASHINGTON, | |
| Respondent. | |

BJORGEN, J. — Charles J. Nakano appeals a superior court judgment affirming a

Board of Industrial Insurance Appeals (Board) order, which in turn affirmed two orders

of the Department of Labor and Industries (Department). Nakano argues the trial court

erred in finding that he received the Department's February 5, 2010 order no later than

February 10, 2010, so that his protest of that order was untimely. In the alternative,

Nakano argues that the trial court erred in declining to exercise its equitable powers to

relieve him from the finality of the February 5 order. We affirm.

FACTS

After suffering serious injuries on the job, Nakano applied for and received workers'

compensation benefits as an employee of Nakano & Sons Logging Inc.

Subsequently, in an order issued October 6, 2009, the Department ruled that Nakano

obtained benefits on the basis of a willful misrepresentation. The order required Nakano to repay

the value of the benefits and a 50 percent penalty, totaling $985,973.92. The order further

advised that it would become final 60 days from the date it was communicated, unless Nakano

protested or appealed. The Department also referred the matter to the prosecuting attorney for

Lewis County to consider criminal charges. On October 7, Nakano filed a timely protest of the order through his attorney, Jack W. Hanemann.

Also on October 7, the Department put its order into abeyance. The abeyance had two purposes. First, it gave the Department and medical providers time to reconcile their accounts, ensuring that the Department paid only for services provided before the October 6 order. Second, the Department took the position that the abeyance protected Nakano from giving testimony in an administrative proceeding and later having his own testimony form the basis of a criminal prosecution against him.

In early January 2010, the Department's adjudicator, Alan Gruse, communicated about the abeyance with Frank Parascondola, a paralegal with the Hanemann law office. According to Gruse, he said the Department would "wait until criminal charges are filed" before considering Nakano's protest, "to protect the rights of his client." Board Record (BR) (July 29, 2010) Alan Gruse Testimony, at 116. According to Parascondola, Gruse said, "[A]s soon as that case is done in Lewis County, the criminal matter is over, we could proceed with this [administrative] matter." BR (July 29, 2010) Frank Parascondola Testimony, at 52. Thus, there was apparently a misunderstanding as to whether the abeyance would run until the beginning or the end of the criminal matter.

Gruse learned in late January 2010, that the Lewis County prosecuting attorney had filed criminal charges against Nakano.[1] By then, the Department had had enough time to reconcile its accounts with Nakano's medical providers. Accordingly, on February 5, 2010, the Department issued a new order stating: "This order corrects and supersedes the order(s) of 10/06/2009." BR

---

[1] On October 21, 2010, the criminal charges against Nakano were dismissed without prejudice.

2

at 59. The February 5 order revised the amount Nakano owed to $992,820.93 and advised again that Nakano had 60 days to protest or appeal. The February 5 order did not continue the prior abeyance. The Department mailed the order to the office of Nakano's attorney on the afternoon of February 5, 2010.

On April 13, 2010, after determining that no protest of the February 5 order had been filed, Gruse called Parascondola to ask when their office received the February 5 order. According to Gruse, Parascondola gave February 8 as his answer. Parascondola later testified that "I may have said that we should have received it the week of [February 8], but I did not say on that date." BR (July 29, 2010), Parascondola Testimony, at 73. Parascondola's answer led Gruse to conclude that the 60-day period had run and the February 5 order was final.

The conversation then turned contentious and ended abruptly. Within minutes after it ended, Parascondola faxed to the Department a protest and then an amended protest of the February 5 order. When Gruse arrived at work the next morning, April 14, he retrieved a voice mail message left by Parascondola after business hours. In the message, Parascondola said that he had referred to the wrong document in answering Gruse's question and that the order apparently had arrived on February 10. Parascondola called again that morning and spoke to Gruse, explaining his mistake and also stating that the order did not bear a date stamp showing when it was received. Gruse replied that even if he accepted this explanation, the protest would still be untimely.

On April 15, 2010, the Department issued an order denying Nakano's April 13 protest as untimely. On May 27, Nakano appealed the April 15 order to the Board. Separately, on April 14, 2010, Nakano requested a direct appeal of the February 5 order to the Board. On April 27,

3

2010, the Board granted review of this direct appeal, "subject to proof that it was filed within 60 days of [Nakano]'s receipt of the [order]." BR at 62.

The Board consolidated Nakano's two appeals, which both turned on when Nakano had received the February 5 order. If Nakano received the February 5 order on or after Friday, February 12, 2010, then his April 13 protest would be timely. If he received it before February 12, then his protest would be untimely.

At the administrative appeal hearing before an industrial appeals judge, Nakano took the position that (1) because his attorney's law firm had not date-stamped the order upon receipt, it must have arrived on February 9, February 12, or later; (2) the order could not have arrived on February 9 because Parascondola did not mention the order in a February 10 phone call with Nakano; and (3) the order probably arrived on February 15, because Parascondola set a reminder for March 15 and he would have set that reminder for a date 30 days after he first saw the order. However, Parascondola also admitted that, according to his own notes, he sent a copy of the order to Nakano on February 10.

Nakano also introduced evidence that the law firm's prior receptionist left that position on February 5, 2010, when she was promoted to legal secretary. The new receptionist began on Monday, February 8, and was trained by the prior receptionist during that week. The prior receptionist was present on February 8, 10, and 11 when the mail was delivered and testified that the order would have been date stamped if it had been delivered on any of those dates. The prior receptionist testified that another firm employee personally supervised the new receptionist on February 9 and that all mail received on that date would have been date stamped. The prior

4

receptionist testified also that, at least once every one to two months, mail arrives from the Department more than five days after the date of the order.

The Department presented evidence that it followed its usual practice and mailed the order on February 5. The Department received no notice that the envelope sent to the Hanemann's law office was undeliverable.

The industrial appeals judge issued a proposed decision and order, finding that Nakano received the February 5 order "on or before February 10, 2010" and ruling that his protest was untimely. BR at 50. Nakano filed a petition for review by the three members of the Board. On November 19, 2010, the Board denied the petition and adopted the proposed decision and order.

Nakano appealed to the Lewis County Superior Court. After a trial de novo on the certified appeals board record, the superior court affirmed the Board's decision. The trial court found that "Charles J. Nakano, through his attorney and representative, received a copy of the February 5, 2010 order, on or before February 10, 2010." Clerk's Papers (CP) at 51. Accordingly, the trial court found that the February 5 order became final and binding before Nakano first protested it on April 13.

Alternatively, Nakano asked the trial court to grant equitable relief from the finality of the February 5 order for two reasons: (1) Gruse misled Parascondola about the abeyance during their first phone call and (2) according to Parascondola, the Department's "R Log" computer

No. 42642-1-II

system suggested that the February 5 order would become final on May 2, 2010.[2] The trial court did not grant equitable relief, but the record on appeal does not show its reasoning.[3]

Nakano appeals the trial court's judgment.

## ANALYSIS

### I. TIMELINESS OF THE APPEAL

Nakano argues that his April 13 protest was timely. We disagree.

Our review is limited in scope. We examine the record to determine whether substantial evidence supports the trial court's findings of fact, and we determine whether its conclusions of law flow from those findings. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

### A. Findings of Fact

Nakano assigns error to three of the trial court's findings: (1) that the February 5 order was mailed on February 5, 2010, (2) that Nakano received the February 5 order by February 10, 2010, and (3) that Nakano filed his April 13 protest more than 60 days after February 10, 2010. We see no error in these findings.

We review a trial court's challenged findings of fact for substantial evidence. *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006). Substantial evidence is evidence sufficient to persuade a fair-minded person of the finding's truth or correctness.

---

[2] Nakano does not argue the second of these reasons on appeal and therefore has abandoned that ground. *See* RAP 10.3(a)(4), (6); *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

[3] The record on appeal does not include a report of proceedings in the trial court. Neither the judgment nor the trial court's findings of fact and conclusions of law specifically address Nakano's request for equitable relief.

No. 42642-1-II

*Watson*, 133 Wn. App. at 909. "The substantial evidence standard is deferential and requires the appellate court to view all evidence and inferences in the light most favorable to the prevailing party." *Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006). This standard "necessarily entails acceptance of the fact finder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences." *State ex rel. Lige & Wm. B. Dickson Co. v. Pierce County*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992).

### 1. Mailing the Order

Nakano assigns error to finding 1.4, arguing that "[t]he Department may have delivered the order to the post office, but there is no evidence that the post office actually mailed the order to . . . Mr. Nakano on February 5, 2010." Br. of Appellant at 8. This argument fails because finding 1.4 does not address the post office's handling of the order. Finding 1.4 states in its entirety:

> On February 5, 2010, the department mailed its order dated February 5, 2010, to Charles Nakano, c/o Hanemann Bateman, et al, at 2120 State Avenue NE, Suite 101, Olympia, WA 98506. The order was properly addressed, had the correct postage, and was delivered to the United States Post Office for regular mail delivery to the claimant.

CP at 51.

Substantial evidence supports this finding. The Department may prove that it mailed an order by showing (1) that it has a customary practice for mailing orders and (2) that it followed the practice in a given instance. *Farrow v. Dep't of Labor & Indus.*, 179 Wash. 453, 455, 38 P.2d 240 (1934). Finding 1.3, which was not challenged and is therefore a verity, *see In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004), states that the Department's "usual and customary practice [for mailing orders] was followed for the February 5, 2010 order." CP at 51.

7.

Further, the post office never informed the Department that the order was undeliverable. To the contrary, the order was received at the law office through the mail. Because the post office delivered the order to the law office, it is reasonable to infer that the letter was properly addressed, displayed correct postage, and had been delivered to the post office. *See Lewis*, 157 Wn.2d at 468. Substantial evidence supports finding 1.4.

2. Receipt of the Order

Next, Nakano assigns error to the trial court's finding that he received the order on or before February 10, 2010, arguing that he received it February 12, 2010 or later.

Even though Hanemann's office did not stamp the order upon receipt, substantial evidence supports the trial court's finding. We presume that once the Department places an order in the mail, the order proceeds in due course until delivery to the recipient. *Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*, 57 Wn. App. 886, 889, 790 P.2d 1254 (1990). The Hanemann law office typically receives orders or checks from the Department two or three days after they are dated. As described above, the Department mailed the February 5 order on February 5. The trial court found that the Hanemann law office received the order by February 10, 2010, which was five days after the mailing date. Although there was testimony that the Department's orders sometimes took longer to reach the Hanemann law office, no evidence showed that delivery of this particular order took longer than usual. Standing alone, the February 5 mailing of the order provides substantial evidence that the order arrived by February 10.

Even more to the point, Parascondola admitted that, according to his own notes, he sent a copy of the order to Nakano on February 10. Further, Gruse testified that Parascondola stated

during their two telephone conversations that he received the order on either February 8 or February 10. For his part, Parascondola testified that he referred to the week of February 8 and that he relied on the wrong documents. This court, though, does not weigh the evidence to resolve conflicts in the record. *See Lige*, 65 Wn. App. at 618. Parascondola's admission and Gruse's account are also substantial evidence of receipt by February 10.

Nakano argues that the order could not have arrived before February 12, because (1) Hanemann's office would have date stamped the order if it had arrived earlier, (2) Parascondola would have mentioned receiving the order in his February 10 phone call with Nakano, and (3) Parascondola tickled the order for March 15, which allegedly was 30 days after discussing the order with Hanemann on the day it arrived. A fair-minded person, though, could find instead from all the evidence that (1) Parascondola correctly told Gruse that the order arrived by February 10 and (2) Parascondola's notes truthfully showed that he had the order on February 10. *See Watson*, 133 Wn. App. at 909. A bedrock rule prevents this court from reweighing the evidence. *See Lige*, 65 Wn. App. at 618. Substantial evidence supports the trial court's finding that Nakano received the order on or before February 10, 2010.

3. Interval Between Receipt of the Order and Filing of the Protest

Lastly, Nakano assigns error to the trial court's finding that "Nakano's April 13 protest was filed more than 60 days following February 10, 2010." Br. of Appellant at 8. In fact, April 13, 2010 was 62 days after February 10, 2010, a matter of which we may take judicial notice. *See Kelliher v. Inv. & Sec. Co.*, 177 Wash. 82, 85, 30 P.2d 985 (1934) (taking judicial notice of a 1931 calendar); *see* ER 201(b)(2), (c), (f). In addition, Gruse testified he told Parascondola that if the Hanemann law office received the order on February 10, 2010, then the April 13 protest

9

came 62 days after receipt. Nothing in the record contradicts this statement. Substantial evidence supports the trial court's finding that Nakano's April 13 protest was filed more than 60 days after February 10, 2010. None of the challenged findings are erroneous.

B.    Conclusions of Law

Nakano argues that the trial court erred as a matter of law by affirming the Board's order and dismissing his protest because it was untimely. We disagree.

We review de novo whether the trial court's conclusions of law flow from the findings of fact. *Watson*, 133 Wn. App. at 909. The Department's orders are final and binding "unless set aside on an appeal authorized by the statute, or unless fraud, or something of like nature, which equity recognizes as sufficient to vacate a judgment, has intervened." *Abraham v. Dep't of Labor & Indus.*, 178 Wash. 160, 163, 34 P.2d 457 (1934). The statute authorizes a party to file a protest with the Department or an appeal with the Board "within sixty days from the date the order is communicated to the parties." RCW 51.52.050(1). An order is "communicated" to a party when the party receives it. *Kaiser*, 57 Wn. App. at 889.

As just shown, the finding that Nakano received the February 5 order on February 10 is supported by substantial evidence and must be sustained. Thus, the order became final and binding 60 days later, on April 11, unless Nakano filed a protest or appeal before then. Nakano filed his protest on April 13. Therefore, the February 5 order became final and binding, and Nakano's untimely protest is not authorized by the statute. *See* RCW 51.52.050; *Abraham*, 178 Wash. at 163. The trial court correctly affirmed the Board's decision and dismissed Nakano's protest.

10

Citing RCW 51.12.010 and *Dennis v. Department of Labor & Industries*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987), Nakano argues that we must construe Title 51 RCW liberally and resolve any doubts in the worker's favor.[4] Our Supreme Court has explained, though, that:

> it must be remembered that workmen's compensation statutes shall be liberally construed, and, also, that that rule does not apply to questions of fact but to matters concerning the construction of the statute, and that the principle does not dispense with the requirement that those who claim benefits under the act must, by competent evidence, prove the facts upon which they rely.

*Ehman v. Dep't of Labor & Indus.*, 33 Wn.2d 584, 595, 206 P.2d 787 (1949); *accord Dennis*, 109 Wn.2d at 470 (construing statutory language, not a matter of fact).

Here, the meaning of RCW 51.52.050 is not in doubt. Nakano had 60 days to file an appeal or protest of the February 5 order, and he failed to do so. The February 5 order is final and binding.

## II. EQUITABLE RELIEF

As an alternative to his contention that his protest was timely, Nakano makes two equitable arguments for relief. First, he argues that he is entitled to equitable relief from the finality of the February 5 order under cases relating to the Department. Second, he argues that the doctrine of equitable estoppel entitles him to a stay of the February 5 order.

The appropriateness of equitable relief is a question of law. *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005). We review this question de novo. *Bank of Am., NA v. Prestance Corp.*, 160 Wn.2d 560, 564, 160 P.3d 17 (2007).

---

[4] RCW 51.12.010 provides, in relevant part, "This title shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment."

A.  Equitable Relief Under Cases Dealing with Labor and Industries

Although fragmented into three opinions, our Supreme Court in *Kingery v. Department of Labor & Industries*, 132 Wn.2d 162, 173, 937 P.2d 565 (1997) (lead opinion), plainly recognized an "equitable power in the courts, apart from the provisions of Title 51 RCW, to set aside actions of the Department." In *Kingery*, the four-judge lead opinion would have hewn to prior case law and denied equitable relief from an appeal deadline because the claimant was neither incompetent nor illiterate. *Kingery*, 132 Wn.2d at 177-78. The four-judge dissent would have extended relief to the claimant, even though she was not incompetent or illiterate, because the obstacles she faced in discovering needed evidence were equivalent to the obstacles of incompetence or illiteracy. *Kingery*, 132 Wn.2d at 182 (Alexander, J., dissenting). Justice Madsen, concurring, agreed with the dissent in its broader view of the circumstances, which would justify equitable relief, but agreed with the lead opinion that relief must be denied where the claimant had not diligently pursued her rights. *Kingery*, 132 Wn.2d at 178. Thus, two requirements must be met before equitable relief may be granted: (1) circumstances justifying equity's intervention must be present and (2) the claimant must diligently pursue her rights. *Kingery*, 132 Wn.2d at 177-78; *Fields Corp. v. Dep't of Labor & Indus.*, 112 Wn. App. 450, 459-60, 45 P.3d 1121 (2002).

Other decisions further define the circumstances that meet the first prong of this test. In *Fields*, 112 Wn. App. at 460-61, we held that the circumstances excused a party's failure to file a timely appeal, because it was impossible for the party to have known facts needed for the appeal within the appeal period. In *Kustura v. Department of Labor & Industries*, 142 Wn. App. 655, 673, 175 P.3d 1117 (2008), *aff'd on other grounds*, 169 Wn.2d 81 (2010), Division One of our

court held that a failure to appeal is excused when the claimant cites "extraordinary circumstances preventing [him] from receiving the order[] or timely challenging [it]." Departmental misconduct in communicating the order is one such circumstance. *Kustura*, 142 Wn. App. at 671. Misconduct is not present, though, simply because the Department sent an order printed in English to a claimant who speaks no English when the claimant has the assistance of attorneys or interpreters. *Kustura*, 142 Wn. App. at 673.

Our case law has also found sufficient misconduct for equity's remedy where the Department adjudicates a claim ex parte and denies benefits, knowing that the claimant is incompetent and cannot participate in the adjudication. *See Ames v. Dep't of Labor & Indus.*, 176 Wash. 509, 514, 30 P.2d 239 (1934). Similarly, it is misconduct for the Department to issue an order written in English when it knows that the claimant speaks no English, is "extremely illiterate," and has no person available to translate the order for him. *Rodriguez v. Dep't of Labor & Indus.*, 85 Wn.2d 949, 950, 954-55, 540 P.2d 1359 (1975). As just noted, though, after *Kingery*, neither incompetency nor illiteracy is a necessary condition to the exercise of an equitable remedy.

Nakano argues that Gruse's allegedly misleading statements about the abeyance in January 2010 are the sort of misconduct that excuses Nakano's failure to appeal. He argues that because Gruse said that one of the purposes of the abeyance was to protect Nakano's privilege against self-incrimination, Parascondola reasonably understood that the abeyance would continue until the resolution of any criminal action against Nakano. Tr. at 52; *see* Tr. at 116. We disagree.

13

> The constitutional privilege against self-incrimination
>
> not only permits a person to refuse to testify against himself at a criminal trial, but also allows him not to answer official questions put to him in any other proceeding, civil or criminal, where the answer might incriminate him in future criminal proceedings.

*State v. King*, 130 Wn.2d 517, 523-24, 925 P.2d 606 (1996). Thus, the abeyance had no effect on Nakano's privilege.

Further, Parascondola could not have reasonably maintained the understanding he formed from his January 2010 phone call with Gruse, after the February 5, 2010 order superseded the prior October 6 order and did not hold its terms in abeyance. Assuming that the January conversation proceeded as Parascondola states, the Department's statements in that conversation, viewed in isolation, would have been inaccurate and misleading. The subsequent February 5 order, though, reasonably dispelled those effects. The alleged misconduct does not rise to the level warranting equitable relief under the case law discussed above.

The circumstances are even clearer that Nakano does not meet the second requirement for the intervention of equity, that he diligently pursue his rights. If Parascondola reasonably thought that Gruse told him in January that the Department would maintain the abeyance until the criminal action was resolved, he should reasonably have contacted Gruse when he saw that the February 5 order said nothing about an abeyance. Continuing to rely on the January conversation after the February 5 order was not reasonably diligent. Accordingly, Nakano does not meet the second requirement for an equitable remedy under the case law above.

B.    Equitable Estoppel

Lastly, Nakano argues that the doctrine of equitable estoppel entitles him to relief. We disagree.

14

"Equitable estoppel is based on the principle that: 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'" *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993) (quoting *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975)). In general, equitable estoppel will lie if three elements are present: "first, an admission, statement, or act inconsistent with a claim afterward asserted; second, action by another in reasonable reliance on that act, statement, or admission; and third, injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992). Since equitable estoppel against the government is not favored, two additional requirements must be met here: "equitable estoppel must be necessary to prevent a manifest injustice, and the exercise of governmental functions must not be impaired as a result of the estoppel." *Kramarevcky*, 122 Wn.2d at 743.

Although Nakano asserts equitable estoppel by name for the first time on appeal, his case for equitable relief below rested on the essence of the doctrine, reasonable reliance on a representation that was later contradicted to his harm. Consistent with RAP 2.5(a) and *East Gig Harbor Improvement Association v. Pierce County*, 106 Wn.2d 707, 709-10 n.1, 724 P.2d 1009 (1986), we reach his claim on appeal.

The record on this appeal does not include specific findings on matters pertaining to the elements of equitable estoppel. However, we may affirm the trial court's judgment on any ground supported by the record. RAP 2.5(a); *Pearson v. Dep't of Labor & Indus.*, 164 Wn. App. 426, 441, 262 P.3d 837 (2011). Assuming the resolution of all factual disputes in Nakano's

No. 42642-1-II

favor, we hold that his reliance on the January statements by Gruse was not justifiable after receipt of the February 5 order, for the reasons discussed above. Thus, the requirements for equitable estoppel are not met.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, J.

WORSWICK, C.J.

16