# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LESA CATT,<br><br>               Appellant,<br><br>    v.<br><br>DEPARTMENT OF LABOR AND<br>INDUSTRIES OF THE STATE OF<br>WASHINGTON,<br><br>               Respondent. | No. 56741-5-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Lesa Catt appeals the superior court's order affirming the Board of Industrial Insurance Appeals (Board) regarding the calculation of her industrial insurance benefits. Catt challenges the superior court's finding of fact that corporate distributions from her company, Gold Definitions, Inc., were not wages. The superior court determined the distributions reflected company profits, not Catt's wages as a worker. We determine that the challenged finding of fact was supported by substantial evidence and affirm the superior court.

## FACTS

Catt was the sole owner of a jewelry store called Gold Definitions, which was structured as an S corporation. Catt performed administrative tasks, such as bookkeeping, payroll services, and business operations, and also worked for the company as a bench jeweler, performing jewelry repair.

No. 56741-5-II

For her work at Gold Definitions, Catt received a W-2 salary. Catt also received "capital draws" by withdrawing corporate funds from Gold Definitions. From 2014 to 2017, Catt reported the following amounts for her W-2 salary, capital draws, and total income on her 1040 income tax forms:

|  | W-2 Salary | Capital Draws | Total Income |
|---|---|---|---|
| 2014 | $34,999 | $47,602 | $82,601 |
| 2015 | $36,346 | $48,097 | $81,447 |
| 2016 | $33,653 | $48,618 | $81,077 |
| 2017 | $33,653 | $8,324 | $41,977 |

Clerk's Papers (CP) at 179, 182, 189, 200.

As shown by the above table, Catt reported over $80,000 of total income per year from 2014 to 2016, but her total income in 2017 was reduced by nearly half. Catt asserted that the difference in her income was due to the costs of moving the Gold Definitions storefront to another location.

In 2018, Catt sought medical treatment for work-related injuries. Despite treatment, Catt was unable to return to work, and Gold Definitions permanently closed.

In June 2018, Catt filed a claim for industrial insurance benefits with the Department of Labor and Industries (Department). The Department allowed Catt's claim and issued a wage order with Catt's calculated "wages." In its calculation of Catt's wages, the Department appears to have decided that her wages should include *both* Catt's W-2 salary and capital draws for the previous year, 2017. Thus, the Department determined that Catt's monthly wages for her industrial benefits claim were $3,498.00 (almost exactly 1/12 of her total income in 2017).

2

Catt appealed to the Board, arguing that the Department incorrectly calculated her monthly wages. She contended that the Department should have included the values from her capital draws in past years because she paid herself a much-reduced amount in 2017. An administrative hearing before a judge for the Board was conducted in September 2020.

At the hearing, Catt testified about the facts of her employment, compensation, and injuries. Catt claimed she took a salary for her administrative work, which was reported on her taxes by a W-2 tax form. Catt also claimed she compensated herself for her work as a bench jeweler through "capital draw[s]" by withdrawing funds from Gold Definitions. Catt explained that the reduction in her income in 2017 was due to the costs of moving the Gold Definitions storefront to another location. Notwithstanding her testimony, Catt's checks and tax forms did not specify which compensation was for which type of work Catt performed. Catt also did not submit any receipts or other documents supporting her testimony about the move or its expenses.

Also testifying at the hearing was Shelley Drury, a certified public accountant specializing in business evaluation. Drury testified that a business owner's salary is usually "based on what comparable market salaries are," balanced with tax considerations. CP at 147. Drury stated, "[A]nything else is profit that flows to the bottom line." CP at 148. According to Drury, an owner of a business is entitled to any profits left over after all expenses are paid. Catt, for example, would still be entitled to her capital draws even if she hired employees to perform the work she did for Gold Definitions. Drury characterized Catt's W-2 salary as her personal income and her capital draws as business income. Drury opined that Catt's W-2 salary would be an appropriate "wage" because that is the approximate amount she would pay someone else to perform her functions for Gold Definitions. CP at 155.

3

In February 2021, a judge for the Board issued a proposed decision and order. The judge decided that Catt's monthly wages should have been limited to her W-2 salary wages and Catt failed to show that her capital draws should have been included. Nevertheless, because the Board was tasked solely with determining whether Catt should receive *more* than that determined by the Department, the judge affirmed the Department's calculation of Catt's monthly wages.

Catt filed a petition for review by the full Board. The Board denied the petition and adopted the proposed decision and order. The Board's order included the following findings of fact:

> 1. On February 18, 2020, an industrial appeals judge certified that the parties agreed to include the Jurisdictional History in the Board record solely for jurisdictional purposes.
>
> 2. Ms. Catt developed an occupational disease that arose naturally and proximately out of distinctive conditions of her employment with Gold Definitions, Inc.
>
> 3. The claimant is the sole owner of Gold Definitions, Inc., an "S" Corporation as permitted by the Internal Revenue Service Code and she received income from this business.
>
> 4. Ms. Catt worked forty hours a week, performing bench jewelry functions along with supervisory duties and gave inconsistent figures for her hourly wage.
>
> 5. As of the occupational disease date of manifestation, June 18, 2018, Ms. Catt was single with one dependent.
>
> 6. In addition to her reported wages, Ms. Catt received income as owner draws from the bottom line profits earned by the business.
>
> 7. The profits, or owner draws, Ms. Catt made from her sole ownership of Gold Definitions, Inc., are not wages and are not bonuses.
>
> 8. Federal income tax documents for the two prior years of 2016, and 2017, reflect a fixed and fairly and reasonably ascertained wage and such is in the amount of $33,653, which is $2,804.42 per month.
>
> 9. On October 24, 2019, the Department affirmed its prior wage orders dated September 5, 2019, and July 1, 2019, which set Ms. Catt's wage for the job of injury based on a total monthly salary of $3,498; zero per month for additional wages, and single with one dependent.

CP at 38. The order also included the following conclusions of law:

1. The Board of Industrial Insurance Appeals has jurisdiction over the parties and subject matter in this appeal.

2. The scope of the Board's review is limited to determining if Ms. Catt is entitled to additional wages beyond that set by the Department based on $3,498 per month. *Brakus v. Department of Labor & Industries*, 48 Wn.2d 218 (1956).

3. As of the date of manifestation, Ms. Catt's wage was $3,498 per month, zero per month for additional wages, single with one dependent, pursuant to RCW 51.08.178(1).

4. The Department order dated October 24, 2019, is affirmed.

CP at 39.

Catt appealed the Board's order to the superior court. The superior court affirmed the Board's order and issued its own findings of fact and conclusions of law. Finding of fact 1.2 stated that a preponderance of the evidence supported the Board's findings of fact and incorporated the Board's findings. The superior court also adopted and incorporated the Board's conclusions of law in its own conclusions of law.

Catt appeals.

ANALYSIS

Catt argues that the superior court erred when it adopted the Board's order that determined that her capital draws were not wages. She further argues that her capital draws for the years prior to 2017 should have been used to calculate her wages. We disagree.

I. LEGAL PRINCIPLES

"Under Washington's Industrial Insurance Act (Act), Title 51 RCW, time-loss and loss of earning power compensation rates are determined by reference to a worker's wage at the time of injury." *Gallo v. Dep't of Lab. & Indus.*, 155 Wn.2d 470, 481, 120 P.3d 564 (2005). " 'The purpose of time-loss compensation is to reflect a worker's lost earning capacity.' " *Id.* (quoting *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997)). The

5

injured worker's "wages" are the basis for the computation of time-loss compensation. *Id.* The definition of "wages" states, "[T]he monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned." RCW 51.08.178(1). When appealing a Department decision to the Board, the appellant has the burden of proof to establish the evidence necessary for their requested relief. RCW 51.52.050(2)(a).

In industrial insurance cases, the superior court conducts "a de novo review of the [Board's] decision but relies exclusively on the certified board record." *Watson v. Dep't of Lab. & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006); RCW 51.52.115. "The [Board's] findings and decision are prima facie correct and the worker challenging the [Board's] decision has the burden of proof." *Id.*

Our review of appeals under the Act is subject to the ordinary rules governing civil appeals. RCW 51.52.140; *Malang v. Dep't of Lab. & Indus.*, 139 Wn. App. 677, 683, 162 P.3d 450 (2007). Therefore, we review the superior court's findings of fact to determine whether they are supported by substantial evidence and review conclusions of law de novo. *Watson*, 133 Wn. App. at 909. "Unchallenged findings of fact are verities on appeal." *Hopkins v. Dep't of Lab. & Indus.*, 11 Wn. App. 2d 349, 353, 453 P.3d 755 (2019). The burden of proof is on the party challenging the decision below. RCW 51.52.115.

II. APPLICATION

Catt has the burden to show that the superior court's findings of fact are not supported by substantial evidence. Catt appears to challenge the superior court's finding of fact 1.2.7 (which was the Board's finding of fact 7):[1]

> The profits, or owner draws, Ms. Catt made from her sole ownership of Gold
> Definitions, Inc. are not wages and are not bonuses.

CP at 239.

Substantial evidence supports finding of fact 1.2.7. Drury explained that Catt's W-2 salary was most representative of her personal income and the capital draws taken were representative of Gold Definitions' business profits. Drury further explained that Catt was entitled to take the capital draws as the owner of the business, but her wages were more accurately represented by her W-2 salary because that would be the approximate cost of hiring someone else to perform her work at Gold Definitions. Even if Catt hired someone else to complete her responsibilities for the company, according to Drury, Catt would still be able to collect the capital draws. Because Catt would be entitled to the capital draws regardless of whether she was performing work, the capital draws would not be representative of Catt's wages.

Catt argued below, and reargues here, that the capital draws were not corporate profits, but were compensation for her work as a bench jeweler. Catt contends she took these wages in the form of capital draws purely for tax reasons. Although Catt had the opportunity at the hearing to

---

[1] Catt fails to directly assign error to any of the superior court's findings of fact. This failure would typically preclude appellate consideration of those arguments under RAP 10.3(g). However, we may consider arguments despite noncompliance with the rules of appellate procedure. RAP 1.2. Given that the substance of Catt's arguments can be otherwise discerned from her briefing, we exercise our discretion to consider Catt's challenge to the order of the superior court. RAP 1.2.

provide testimony and evidence supporting her position, the Board and the superior court were unpersuaded. And we do not reweigh evidence on substantial evidence review. *See Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 103, 187 P.3d 243 (2008). Because the superior court's finding of fact 1.2.7 (capital draws were business profits, not wages) is supported by substantial evidence, Catt's challenge to this aspect of the superior court's order fails.

Catt also argues that the superior court used the wrong year to calculate her wages. Specifically, she argues her 2017 income should not have been used because that year did not represent her accurate wages. Pointing to her much higher total income in 2014, 2015, and 2016, Catt contends those years should have been used to calculate her industrial insurance benefits. But critically, the only significant difference in Catt's income for those years compared to 2017 is with her capital draws, not her W-2 salary. Indeed, her W-2 salary figures are notably consistent from year to year. After removing capital draws from consideration in accordance with the superior court's finding of fact 1.2.7, using a different year for wage calculation would not benefit Catt because only her very similar W-2 earnings from previous years would be used. This would actually lower Catt's wages because, as explained above, the Department initially included both capital draws and wages from 2017 for Catt's wages.

Once it is concluded that substantial evidence supports the superior court's finding that Catt's capital draws were not wages, there is no error in the superior court's determination of Catt's monthly wages for her benefits. Without the capital draws, Catt's wages would be reflected only by her reported W-2 salary. From Catt's W-2 salary, the Board calculated her monthly income at $2,804.42. Yet, because the Department initially calculated Catt's monthly wages to be $3,489.00,

No. 56741-5-II

Catt receives the benefit of that decision.[2]  *See Brakus v. Dep't of Lab. & Indus.*, 48 Wn.2d 218, 219-20, 292 P.2d 865 (1956) (scope of review for industrial insurance appeals is limited only to issues raised on appeal).  The superior court did not err when it determined this was the correct amount of wages.

III.  ATTORNEY FEES

Catt requests attorney fees if she is entitled to a benefit increase.  Because Catt is not entitled to a larger benefit, we do not award her attorney fees.  *See* RCW 51.52.130(1) (attorney fees may be awarded if the worker is granted additional relief).

CONCLUSION

We determine that the superior court's finding of fact determining that Catt's capital draws were not wages is supported by substantial evidence.  Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
CRUSER, A.C.J.

_____
VELJACIC, J.

---

[2] The Board and, by adoption, the superior court recognized this limitation in their orders.

9